May it please the Court, my name is Hilary Hahn and I represent the petitioner Fode Sillah. The immigration judge in this case found that Mr. Sillah didn't provide testimony sufficient to establish that he entered the United States on May 29, 2002, and thus that he applied for asylum within a year of his arrival into the United States. The primary questions I think before this Court are, first of all, whether there's jurisdiction to review that portion of the immigration judge's determination, and secondly, if there is, whether substantial evidence supports that finding. And so I'd like to turn right away to the jurisdictional issue. Under the Court's reissued opinion in Ramadan, there's jurisdiction to review a one-year determination where there's the application of a statute or regulation to undisputed fact. In this case, Mr. Sillah testified as to how he traveled from Sierra Leone to the United States, when he entered the country, where he entered the country, and nothing in the administrative record in any way refutes any of that testimony. The immigration judge himself conceded that that testimony was consistent, but he didn't go so far as to actually say that that testimony was credible. The important point, though, I think, is that he never said that the testimony was not credible. He never made an adverse credibility determination with regard to that testimony. And under this Court's precedent, where there's no adverse credibility determination explicitly, the Court must assume that that testimony is credible. Kennedy. Well, didn't the I.J. find that there was no evidence to establish his arrival on May 29th? Well, he said there was no corroborative evidence, yes. But he didn't provide any reason why the credible testimony was not. I thought what he said was the Court finds the Respondent is not established by clear and convincing evidence when he left, when he last arrived in the United States. So that's a little different from saying no corroborative evidence. Well, but he didn't give any reason. He didn't give any ---- Does he have to give a reason? I'm sorry? Does he have to give a reason to establish, to find that there's no evidence on a particular issue? Yeah. I think he does. I mean, this Court has said that credible testimony is enough to establish your burden of proving any kind of evidentiary point. And so ---- But the evidentiary burden here is different than in many of the aspects of immigration. It's clear and convincing evidence. So under your theory, you would take Ramadan to mean any time there's testimony by an applicant and the Court determines that it's not clear and convincing, it would still be reviewable because it's a question of law, then, as to whether it's clear and convincing? No, not necessarily. I think that in this case, there was credible testimony. There was no basis given by the immigration judge whatsoever to question the credibility of that testimony. And so, you know, the first question under Ramadan is, well, are the facts undisputed? And given that that testimony is credible and given that there's nothing in the record that refutes any of those, any of that testimony, I think you'd have to say that those facts are undisputed. What are those facts? The fact that he said I arrived on May 29th? His testimony, yes. That's all? Well, his testimony was more than just that. I mean, he testified ---- But then, like, under whose passport did you arrive and where did the passport go? And so he didn't have ---- I mean, that is disputing his ---- I mean, it's not like he is impeaching himself, but he doesn't have ---- even his own testimony doesn't back up his testimony, is what I read the I.J. as saying. Well, the immigration judge said the testimony wasn't sufficient. He didn't explain what he meant by insufficient. He pointed out the fact that Mr. Szilagyi didn't know the name on the passport that he traveled on, and he pointed out that he wasn't inspected by immigration officials either leaving Sierra Leone or entering the United States. All of which would be probative of the arrival date, and that was lacking. Well, I don't see how the fact that he wasn't inspected by immigration officials, I don't see how that's in any way undermines the credibility of his testimony. If he thought ---- if the judge thought that that was implausible, he certainly could have said that, but he didn't say that. And I don't think it's inherently implausible that someone would travel with somebody else and not know the name on his passport. If, you know, he explained quite credibly, I think, that he was told by the person with whom he traveled that if he was asked any questions, he should just simply say he didn't speak English. And so if that was implausible in the eyes of the immigration judge or if in any way undermined his credibility, certainly the immigration judge could have said that. And in that case, it probably wouldn't be a reviewable finding. But where he doesn't make any adverse credibility determination, I think we have to treat those facts as undisputed. And then the next question is whether, given the facts are undisputed and there's jurisdiction under Ramadan, whether substantial evidence supports the immigration judge's determination. And I think that, again, you know, the credible testimony, which is unrefuted by any other evidence in the record, establishes the simple point that he entered the country on May 29th, 2002, you know, by a substantial – under a substantial evidence standard. I don't think any reasonable fact finder could find that that credible testimony doesn't meet that burden. Well, this is a little unusual, isn't it, because how could the government refute his statement that he arrived on May 29th? Well, they can cross-examine him, and if they find any inconsistencies in his testimony, if they have any extrinsic evidence that that's not true, they can present that. If his testimony is inherently implausible, they can point that out, and the immigration judge can find that. If the immigration judge thought it wasn't detailed enough as to particular details, he could have pointed out, I don't believe that these are particular details that he should have had that he didn't have. Well, the judge pointed that out in the decision. Well, he didn't – it wasn't clear why he thought that those were issues. I mean, he said it was – Well, it's an issue because if I say, I arrived here 364 days ago, and the immigration says, well, you know, how did you arrive here? You know, what kind of passport did you have? You know what I mean? I arrived 364 days ago. So the immigration says, well, that is not clear and convincing evidence in light of not knowing this other stuff. I agree that the testimony you're talking about wasn't potentially clear and convincing evidence, but – But it's not much different than his. I arrived here 364 days ago on Ghana air. Not really. I mean, he testified as to how he obtained the passport, who helped him obtain the passport, where he left Sierra Leone, on what airline. It's the timing that's the issue, correct? Well, it is. And if that's the issue, then the fact that he didn't know the name on the passport really isn't all that relevant. Could you address the other issue of the merits? The alternate finding? Sure. We think that there are really three factors in the record that undermine the immigration judge's determination and that show that it's not supported by substantial evidence. First, that the State Department report shows that there are still some – there are some abuses committed by former RUF rebels, the same rebels who killed Mr. Silla's in Sierra Leone, and that they continue to hold prisoners in Sierra Leone. Secondly, that the country's evidence shows that there are – the security situation in the country is still fragile. And third, that historically violence in Sierra Leone has been cyclical. There have been periods of ceasefire, followed by periods of violence, by ceasefires and then upsurges of violence again. And I think given that the security situation is fragile in the country and given that RUF rebels continue to operate and commit abuses, I don't think you can say that in light of the history of Sierra Leone that this ceasefire is a fundamental change in the country. But I just want to also – I'd like to save maybe a minute if I could, but I just also want to address briefly the fact that if the Court disagrees with us and believes that the alternate finding was supported by substantial evidence, it's still required to remand under Ventura, because neither the immigration judge nor the government have ever addressed the issues of whether Mr. Silla was subjected to atrocious past persecution or whether he suffered other serious harm in Sierra Leone – would suffer other serious harm in Sierra Leone. And the government agrees that if we get to that point of the analysis, that remand is appropriate under Ventura. Thank you. May it please the Court. Good morning. I'm Manning Evans. I represent the government in this matter. The Court lacks jurisdiction to review the timeliness of Petitioner's asylum claim. As for the withholding claim, substantial evidence – no evidence compels a conclusion contrary to the agency's that improvements in Sierra Leone defeat the claim. Turning first to the question of jurisdiction, footnote 4 of the revised Ramadan decision refers to the timeliness question as a factual determination. That alone shows a lack of jurisdiction, because regarding timeliness, the Court can only review questions of law as well as constitutional issues. Certainly, timeliness is not a constitutional issue, and it's not a pure question of law. And the government asserts that it is not the kind of mixed-question law in fact that Ramadan provides review for. It is true that Ramadan found that jurisdiction exists over certain mixed questions, but the Court emphasized that it was speaking about the application of statutes and regulations to established and undisputed facts. The facts regarding Petitioner's arrival in the United States are not undisputed or established, because the immigration judge found that the Petitioner had not proved those facts with the requisite level of certainty. This finding may have legal aspects to it, but that does not make it a predominantly legal question that could be reviewed. The Second Circuit's Chen decision, to which Ramadan repeatedly cites, acknowledged that the term, question of law, construed in the broadest possible sense, could refer to, and I quote, anything pertaining to the work in which courts are engaged. But Chen emphasized that under the Real ID Act, courts nevertheless lack jurisdiction, quote, when the petition for review essentially disputes the correctness of an IJ's factual finding. And that's at page 329 of the Chen decision. That is the case here where the immigration judge found that Petitioner failed to prove when he arrived in the United States. The Ninth Circuit has long recognized that there are different kinds of mixed questions. Sitting in bank in the United States against McConney, the court distinguished between mixed questions that could be reviewed de novo and those that should be reviewed only for clear error. In particular, the court identified mixed questions in which the applicable legal standard provides for a strictly factual test as one kind of mixed question reviewed only for clear error. If the timeliness question of an asylum application is a mixed question at all, it is at most a question involving a strictly factual test. When did the alien arrive in the United States? When did he file his asylum application? It is therefore markedly different from a predominantly legal mixed question. The latter may be reviewable under Ramadan, but the former questions are not. Would there be circumstances you could envision where the facts are what they are with respect to entry, and then the legal question as to whether those facts rise to clear and convincing? Well, I think that is the question here, Your Honor. And I think the I.J. made a decision that the facts did not rise to the level of clear and convincing. Is that a legal determination based on the facts? I understand what you're asking, Your Honor. And Ramadan sometimes kind of puts us in this, like one of those little mouse things where you keep going around and say, well, but that's a factual. These are the facts. Here they are. I give you this package of facts. Are they clear and convincing? Is that a legal question? If I may refer to another decision of the court, Nakamoto v. Ashcroft, I have a citation here for that. There the court looked at the question of whether or not a clear and convincing standard raised a factual issue to, well, it didn't specifically say whether or not it became a legal question, but it did say that whether or not clear and convincing evidence had been shown was simply a component of deciding whether or not there was substantial evidence. And that shows that this Court considers the clear and convincing standard simply as a tool to be used in finding facts. It doesn't turn the factual, the process of finding facts into a legal question reviewable by this Court. I would also mention, in addition to the points noted earlier by the Court in terms of why the immigration judge was concerned about the date of entry in this case, there were reasons to believe that the alien could have provided corroborating evidence. He had a letter from the person he supposedly stayed with in Sierra Leone before he came here and whom he supposedly traveled with. That person, in the letter they did provide, said nothing about traveling to the United States with the alien. In addition, the alien had sought out a preparer to help him with his asylum application here in the United States. That person never came forward with any information about when the alien came to him. So there are at least some reasons to believe that corroborating evidence was available and that was not provided. Regarding the merits of the changed circumstances determination, the government's decision on this point, in addition, the government has sent for filing a 20HA letter citing decisions in the Second and Eighth Circuits. That will be filed today, so I'm afraid the Court doesn't have it at the moment. But both of those circuits have found that circumstances in Sierra Leone have developed to such a point where incidents of past persecution are no longer enough to prove a likelihood of persecution in the future. I'd also point out that in this case we have no evidence of threats that were posed against the Respondent or against the Petitioner in this case. The attack on his family and him occurred in 1999. He supposedly remained in Sierra Leone for more than two years after that. He claims he didn't go out, but we also know that he did travel to Freetown and that he was able to leave the country without facing any kind of threat. In addition, I point the Court to pages 437 and 438 of the record, where the Petitioner says that he did go to the market with the family he was staying with, and he also worked outside in a garden. Again, there are reasons to believe that alleged or possible persecutors could have or would have sought him out, and yet the record shows that that never happened, or at least there were no threats made to him. The government would ask that the Court dismiss in part and deny in part the petition for review. If there are no other questions, I'll submit them. Thank you. Thank you very much. Just three quick points. First, with regard to the corroborative evidence, there's a lot of talk about the letter from the person who helped him come to the United States. The other corroborative document in the record is his Sierra Leone passport, which was issued in Sierra Leone in March of 2002, and that's certainly evidence. You know, if the Court finds that the credible testimony itself doesn't establish that the fact is undisputed, that is additional corroborative evidence that shows that he was in Sierra Leone in March of 2002, and certainly that he had to have applied for asylum within a year of his last arrival in the United States. Briefly, with regard to the two cases cited by the government in the 28J letter, the Second Circuit decision in Jalo and the Eighth Circuit decision in Diallo, the reason I think those cases aren't very instructive in this particular case is that the analysis, I think, of country conditions evidence is very fact-specific and it depends on what documents were submitted by the petitioner and what documents were submitted by the government in the particular case. And, you know, there's really very little analysis in either of those cases as to why they think country conditions have changed fundamentally. And without the benefit of some of the documents that were submitted in this record, you know, I think it could come out very differently depending on what documents were submitted in support of the case. Thank you. I thank both of you for your argument. The case of Silla v. Mukasey is submitted. Our next case.
judges: McKeown, Clifton, Schwarzer